UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIROU NAKAJIMA

                                    Plaintiff,                              **COMPLAINT**

vs.                                                                         JURY TRIAL DEMANDED

                                                                            Civil Case No.

CITY OF BUFFALO,
CATHERINE M. AMDUR, individually and in her
capacity as Commissioner of the Department of Permit
and Inspection Services for the City of Buffalo,
JOSE SANCHEZ, individually and in his capacity as
Building Inspector for the City of Buffalo,
SEAN MYERS, individually and in his capacity as
Building Inspector for the City of Buffalo, ANGELA
WHITE, individually and in her capacity as Building
Inspector for the City of Buffalo, JOHN/JANE DOE
Individually, and in their capacities as Building Inspectors
For the City of Buffalo, and HANNAH DEMOLITION INC.,

                                    Defendants.

---

Plaintiffs Jirou Nakajima and Financial Steps LLC, by and through their attorneys,

Tiveron Law PLLC, as and for their Verified Complaint against Defendants, allege as follows:

## PRELIMINARY STATEMENT

1.       This is a civil-rights and property-damage action based upon Plaintiffs'

allegations, presently known records, and information reasonably available to Plaintiffs

concerning the City of Buffalo's inspection, demolition, Housing Court, fine, lien, and

enforcement conduct directed at properties owned, managed, or controlled by Plaintiffs in the

City of Buffalo.

1

2.      The City and its personnel did more than make a disputed building-code judgment. Defendants used municipal inspection and enforcement powers to enter or attempt to enter private property without consent or administrative warrant, to treat repairable structures as emergencies, to demolish properties without meaningful pre-deprivation process, to bill Plaintiffs for the destruction, and to continue enforcement through later prosecutions, fines, charges, demands for interior inspections, and related proceedings.

3.      Plaintiffs assert claims under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983. Plaintiffs further plead related state-law claims to the extent permitted by law. Plaintiffs plead these claims separately and in the alternative.

4.      Where inspection, abatement, stabilization, demolition, or public-safety action was necessary, the City had lawful tools available, including administrative-warrant procedures, ordinary unsafe-building notice and hearing procedures, judicial process, and tailored temporary safety measures. Defendants instead used summary action and then continued to rely on the resulting inspection and demolition consequences in later enforcement proceedings.

5.      Plaintiffs are aware that emergency-demolition claims against the City of Buffalo have recently been litigated in Levin v. City of Buffalo, No. 25-762 (2d Cir. June 18, 2026). Plaintiffs do not contend that Levin determines the facts of this case, but cite that authority for the legal proposition that emergency demolition may, depending on the facts, implicate procedural due process, takings, and Fourth Amendment seizure protections when the claimed emergency is disputed.

6.      Plaintiffs allege that the same government conduct may violate more than one constitutional protection. Plaintiffs therefore plead due process, takings, unreasonable-search,

unreasonable-seizure, and other theories separately and in the alternative, without conceding that any one theory is exclusive.

7.    Defendants contend that emergency conditions justified summary demolition or entry. Plaintiffs allege, however, that the emergency characterization was disputed, that pre-deprivation process and less destructive alternatives were feasible, and that Defendants' use of emergency authority was arbitrary, abusive, pretextual, unsupported by a genuine immediate emergency, or otherwise constitutionally unreasonable.

8.    Plaintiffs plead certain events that might otherwise be time-barred both as actionable to the extent permitted by law and, independently, as relevant background, pattern, motive, policy, custom, notice, and causation evidence. New injuries and new enforcement acts occurred within applicable limitations periods.

9.    The factual allegations in this Complaint are based on Plaintiff Jirou Nakajima's personal knowledge, documents presently available to Plaintiffs, communications with counsel, and information and belief where the relevant records or identities are controlled by Defendants. Plaintiffs intend to amend if discovery establishes that any date, property, actor, or theory should be corrected, narrowed, or supplemented.

## PARTIES

10.    Plaintiff Jirou Nakajima is an individual who resides at 9716 Braden Run, Bradenton, Florida 34202, and who owns, owned, beneficially controlled, and/or managed residential properties in Buffalo, New York, including but not limited to 9 Harp Place, 11 Harp Place, 77 Woodlawn Avenue, 239 Florida Street, 635 Woodlawn Avenue, 816 Richmond Avenue, 6 Butler Avenue, and other properties that were the subject of City of Buffalo inspection and enforcement activity.

3

11.    Plaintiff Financial Steps LLC is a limited liability company owned and/or managed by Jirou Nakajima, and at relevant times owned or held record title to certain Buffalo properties affected by the City's inspection, fine, lien, demolition, and enforcement practices, including 635 Woodlawn Avenue. Financial Steps LLC is joined to avoid any technical standing issue concerning properties held by entity ownership.

12.    Defendant City of Buffalo is a municipal corporation organized under the laws of the State of New York and located within the Western District of New York.

13.    Defendant Catherine M. Amdur was, at relevant times, Commissioner of the City of Buffalo Department of Permit and Inspection Services. She is sued individually and in her official capacity. At relevant times, she possessed final policymaking authority for emergency condemnation, demolition, and municipal code-enforcement decisions challenged in this action.

14.    Defendant Jose Sanchez was, at relevant times, a building inspector and/or code-enforcement officer for the City of Buffalo. He is sued individually and in his official capacity.

15.    Defendant Sean Myers was, at relevant times, a building inspector and/or demolition inspector for the City of Buffalo. He is sued individually and in his official capacity.

16.    Defendant Angela White was, at relevant times, a City of Buffalo inspector, code-enforcement officer, and/or municipal agent involved in inspection and enforcement activity at Plaintiffs' properties. She is sued individually and in her official capacity.

17.    Defendants John and Jane Doe City Inspectors 1-10 are City of Buffalo employees, agents, inspectors, or code-enforcement personnel whose identities are presently unknown and who participated in, authorized, ratified, or relied upon warrantless entries, inspections, prosecutions, fines, charges, demolition decisions, and related enforcement activity. Plaintiffs will amend the Complaint when their identities are learned.

4

18. Defendant Hannah Demolition Inc. is a New York corporation with a principal place of business at 205 Baitz, Buffalo, New York 14206. Hannah Demolition entered upon and demolished Plaintiffs' properties pursuant to City authorization, contract, direction, and/or joint action.

## JURISDICTION AND VENUE

19. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the Fourth Amendment, the Fifth Amendment, and the Fourteenth Amendment.

20. This Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

21. This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiffs' federal claims.

22. Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to these claims occurred in Buffalo, New York; the affected properties are located in Buffalo, New York; and Defendants reside in, are employed in, or transact business in this District.

23. At all relevant times, the individual City Defendants acted under color of state law and within the scope, apparent scope, or misuse of their municipal offices, employment, and authority.

## CONDITIONS PRECEDENT, CONTINUING CONDUCT, AND TIMELINESS ALLEGATIONS

24.     Plaintiffs plead continuing municipal conduct and new, repeated acts. Plaintiffs allege that the City's conduct did not end with the physical demolition of 9 Harp Place and 11 Harp Place because the City thereafter continued to prosecute, threaten, fine, bill, lien, demand interior access, seek court appearances, and use the challenged inspection and demolition determinations as predicates for later proceedings and economic injuries.

25.     Plaintiffs allege that each later warrantless entry or attempted entry, interior-inspection demand, violation notice, Housing Court demand, fine, charge, lien, bill, refusal to rescind, and later use of allegedly unlawful inspection observations constituted a separate act and a separate injury to the extent permitted by law, not merely a continuing consequence of one completed event.

26.     The City maintained and continued to rely upon demolition charges, administrative surcharges, property assessments, fines, water/user charges, court proceedings, and inspection demands after the demolitions, thereby extending and renewing the deprivation of Plaintiffs' property interests.

27.     The City also continued aggressive inspection and enforcement activity against other properties owned or controlled by Plaintiffs, including but not limited to 816 Richmond Avenue, 77 Woodlawn Avenue, 239 Florida Street, 635 Woodlawn Avenue, 6 Butler Avenue, and 222 Brunswick Boulevard, demonstrating that the Harp demolitions were part of a broader municipal practice rather than isolated events.

28.     To the extent Defendants claim that a state-law notice of claim was required for any state-law claim, Plaintiffs allege, without waiving any argument, that Defendants had actual

6

knowledge of the relevant facts, were not prejudiced, continued the challenged conduct within applicable periods, and possessed or controlled the relevant inspection, demolition, billing, Housing Court, and enforcement records. Plaintiffs plead tolling, estoppel, and excuse from notice requirements only to the extent supported by the facts and applicable law.

29.     Plaintiffs further plead equitable tolling, equitable estoppel, delayed accrual, continuing violation, and continuing tort theories only to the extent permitted by law. Plaintiffs allege that the City controls many of the inspection, demolition, Housing Court, billing, and enforcement records necessary to determine the full dates, scope, and legal effect of Defendants' conduct.

30.     Plaintiffs do not rely solely on the continuing consequences of a single completed event. New, repeated, and continuing municipal acts, including continuing entries and attempted entries onto properties, continuing interior-access demands, continuing Housing Court proceedings, continuing reliance on earlier inspection observations, continuing fines and charges, and continuing refusal to rescind or correct constitutionally defective enforcement consequences.

31.     Plaintiff Jirou Nakajima specifically alleges, based on his personal knowledge and communications with City personnel, that City personnel and/or municipal code-enforcement actors continue to enter, attempt to enter, or claim authority to enter his properties to this day, despite his objections and despite his communications that no City personnel may enter without consent, a valid administrative warrant, a valid court order, or exigent circumstances.  Jirou Nakajima has never been shy about asserting his rights, and informing Defendants that entry upon his properties could only be done with warrant or upon advanced notice so that he could be present..

32.    To the extent Defendants characterize the Harp demolitions as isolated 2022 events, Plaintiffs allege that later billing, charging, prosecution, threatened warrants or guilty pleas, demolition-related assessments and charges, and continued reliance on the City's inspection and demolition conclusions are separate later acts and also provide relevant background and causation evidence for timely claims.

## FACTUAL ALLEGATIONS

### A. Plaintiffs' Buffalo Properties and the City's Pattern of Enforcement

33.    Jirou Nakajima owns, owned, managed, or controlled several residential properties located in Buffalo, New York.

34.    The affected properties include 9 Harp Place, 11 Harp Place, 77 Woodlawn Avenue, 239 Florida Street, 635 Woodlawn Avenue, 816 Richmond Avenue, 6 Butler Avenue, 222 Brunswick Boulevard, and other properties that became the subject of City inspection and Housing Court enforcement activity.

35.    The City engaged in a continuing course of aggressive and intrusive inspections, warrantless entries or attempted entries, emergency determinations, stop-work directives, violation prosecutions, demolition actions, fines, and charges that interfered with Plaintiffs' ability to repair, restore, sell, use, or enjoy their properties.

36.    Plaintiffs repeatedly objected to City personnel entering their properties without permission, without an administrative warrant, and without lawful authority.

37.    City inspectors nevertheless entered or attempted to enter properties, demanded interior inspections, issued violations, and continued enforcement proceedings based upon alleged observations obtained without consent, warrant, or adequate process.

8

38.     The City's pattern caused Plaintiffs to suffer property loss, restoration losses, demolition charges, fines, legal fees, loss of sale value, loss of use, loss of rental and redevelopment opportunities, and other damages.

### B. 9 Harp Place and 11 Harp Place

39.     Plaintiff Jirou Nakajima purchased 9 Harp Place and 11 Harp Place in a fire-damaged condition for approximately $5,000.

40.     Plaintiff purchased the properties with the intent to repair, restore, and return them to lawful residential use and to the tax rolls.

41.     Plaintiff retained licensed architect Anthony O. James to prepare renovation plans and evaluate whether the fire damage was repairable.

42.     The architect concluded that the properties were repairable and viable for restoration, and identified the roof structure as a primary repair item that could be addressed by new roof framing and related rehabilitation work.

43.     Plaintiff invested substantial sums in cleanup, labor, materials, removal of fire-damaged material, and roof-related repair work, including approximately $75,000 per property and significant additional materials and equipment left on site for restoration.

44.     Plaintiff filed a building-permit application for structural repairs to 11 Harp Place.

45.     On or about August 5, 2021, the City of Buffalo Code Review Office reviewed and approved repair plans for 11 Harp Place, subject to conditions such as an asbestos survey and contractor information before final issuance.

46.     Plaintiff was in the process of satisfying the City's conditions and pursuing repair when the City proceeded toward demolition.

9

47.    Defendants Sanchez, Myers, and/or other City inspectors inspected or purported to inspect 9 Harp Place and 11 Harp Place on multiple occasions, including on or about September 13, 2021 and March 7, 2022.

48.    Plaintiff did not consent to warrantless entry upon the properties for interior inspection, and Defendants did not obtain administrative inspection warrants authorizing entry into protected areas of the properties.

49.    Defendants used inspection observations and subjective conclusions to characterize the Harp properties as "demo worthy," structurally unsound, and in imminent danger of collapse.

50.    Plaintiffs allege in the alternative: if Defendants entered interior or protected areas of the Harp properties to gather observations used to justify demolition, those entries were warrantless and unconstitutional; and if Defendants did not conduct a timely interior inspection before demolition, then the City relied on stale, exterior, incomplete, or subjective information to declare an emergency and destroy repairable structures.

51.    Plaintiffs allege that general conditions such as vacancy, fire damage, debris, openings, or risk of nuisance do not, without a genuine immediate structural danger, establish the kind of emergency that permits permanent demolition without meaningful pre-deprivation process.

52.    On or about April 28, 2022, Defendant Amdur declared 9 Harp Place and 11 Harp Place condemned and requested waiver of ordinary notification requirements on the ground of claimed emergency conditions.

53.     Defendant Amdur characterized the buildings as "STRUCTURALLY UNSOUND AND IN IMMINENT DANGER OF COLLAPSE" and as "FIRE DAMAGED HOUSE, HOLES IN ROOF, WALLS AND CEILINGS."

54.     That characterization directly conflicted with the architect's assessment that the structures could be repaired and returned to productive use.

55.     The City did not adequately consider less destructive alternatives such as temporary stabilization, shoring, securing, fencing, boarding, targeted removal of hazardous elements, issuance of a repair schedule, or a brief stay to allow the architect's repair plan to be reviewed.

56.     Upon information and belief, the City did not obtain a court order authorizing immediate demolition of 9 Harp Place or 11 Harp Place before demolition.

57.     The City did not provide Plaintiff a meaningful pre-deprivation hearing at which he could present his architect's conclusions, repair plans, photographs, contractor information, invoices, permits, and evidence of ability and intent to cure.

58.     Plaintiff alleges that any notices relied upon by the City were constitutionally inadequate under the circumstances because they did not provide a meaningful opportunity to be heard before demolition, did not give Plaintiff a practical opportunity to present repair evidence and obtain a ruling before the buildings were destroyed, and, upon information and belief, included incomplete or unclear deadlines.

59.     Plaintiff further alleges that the City knew he resided in Florida and was not physically present at the Buffalo properties, and that any posting or mailing procedure that left him learning of demolition too late to stop it was not reasonably calculated under all circumstances to provide meaningful pre-deprivation protection.

11

60.     On or about May 9, 2022, Plaintiff's prior attorney, Mark S. Aquino, submitted a written request to Judge Patrick Carney of Buffalo City Court requesting a stay of any demolition orders.

61.     The request explained that an architect was in the process of submitting plans to renovate the properties and keep them on the tax rolls, and asked that demolition be stayed until the City reviewed those plans.

62.     The City did not provide a meaningful response, did not conduct a hearing, and did not stay demolition to consider the repair evidence.

63.     On or about May 6, 2022 through May 18, 2022, the City authorized Defendant Hannah Demolition Inc. to demolish the Harp properties, and demolition proceeded.

64.     Plaintiffs allege that the City's own demolition paperwork reflects a sequence inconsistent with a collapse so imminent that process was impracticable: condemnation letters were dated April 28, 2022; notices and orders to proceed were dated May 6, 2022; demolition permits were issued on or about May 10, 2022; and the work was scheduled to be completed by May 18, 2022. Plaintiffs allege that this sequence supports their claim that there was time to provide meaningful pre-deprivation process or implement less destructive interim safety measures.

65.     Plaintiffs allege that the City's ability to process demolition paperwork, communicate with a demolition contractor, seek or waive notification requirements, issue permits, and schedule demolition work supports the inference that notice, hearing, judicial review, shoring, fencing, boarding, or a short stay would have been feasible.

66.     Plaintiffs allege that the City's refusal to halt demolition after counsel requested a stay, and after Plaintiff attempted to preserve the properties through repair plans, supports the

inference that the City's use of emergency authority was arbitrary, abusive, pretextual, or unsupported by a genuine immediate emergency.

67.    The demolition destroyed the structures, materials, equipment, improvements, and restoration value of the properties.

68.    The City then billed Plaintiff for demolition charges and administrative surcharges, including an invoice dated December 1, 2022 in the amount of approximately $13,685.00, consisting of approximately $11,900.00 in demolition charges and a $1,785.00 administrative surcharge.

69.    The City's post-demolition billing and enforcement continued the deprivation by requiring Plaintiff to pay for the allegedly unlawful destruction of his own property.

70.    In 2023, the City and/or Buffalo City Housing Court continued proceedings concerning 9 Harp Place and 11 Harp Place, including under Docket Nos. CR-00711-22 and CR-02267-22.

71.    By letter dated August 4, 2023, Buffalo City Court notified counsel that the Harp matters were rescheduled to November 9, 2023, and warned that failure to appear could result in an arrest warrant or, as to a corporation, entry of a guilty plea and/or sentence pursuant to CPL § 600.20.

72.    The City's pursuit of Housing Court proceedings after the demolition demonstrates that the constitutional injury and enforcement consequences did not stop upon physical demolition of the buildings.

73.    Plaintiffs further allege that later Housing Court proceedings, fines, threats of warrant or guilty plea, and related enforcement proceedings are relevant later acts and

background evidence showing how the City continued to extract legal and economic consequences from the challenged inspection and demolition decisions.

### C. Continuing Warrantless Inspections and Interior-Access Demands

74. After the Harp demolitions, the City continued hyper-aggressive inspection and enforcement conduct against Plaintiff and his properties. It was insidious.

75. At 816 Richmond Avenue, Plaintiff alleges that Defendant Angela White and another City inspector entered the property, including the interior, without Plaintiff's consent, without an administrative inspection warrant, and without lawful authority.

76. City personnel called police for assistance during or related to the 816 Richmond inspection, which Plaintiffs allege supports the inference that the entry was disputed and that inspectors knew or should have known their authority to enter was contested.

77. Plaintiff had communicated to the City that no City personnel were permitted to enter his properties without consent, warrant, or lawful process.

78. The City issued numerous violations after the 816 Richmond entry, some of which were later rescinded, demonstrating that the City's inspection and enforcement determinations were unreliable, overbroad, or improperly premised.

79. At 77 Woodlawn Avenue and 239 Florida Street, Plaintiff alleges that City inspectors entered upon or attempted to enter upon his properties without consent, without administrative inspection warrants, and without adequate notice.

80. Plaintiff alleges, based on his understanding of the Housing Court proceedings and communications with counsel, that inspectors claimed authority to enter certain properties, including 239 Florida Street and/or 77 Woodlawn Avenue, without adequate prior notice to Plaintiff and without a meaningful opportunity to object before entry or attempted entry.

14

81.    At 6 Butler Avenue, Plaintiff alleges that City personnel trespassed, issued fines, and continued code-enforcement activity in 2025.

82.    At 222 Brunswick Boulevard, Buffalo City Court correspondence dated November 20, 2023 directed counsel to be prepared to report the status of the property and any objection to the City's request for an interior inspection, demonstrating the City's continuing practice of seeking entry to private interiors as part of Housing Court enforcement.

83.    Plaintiff objected to warrantless interior inspections and did not voluntarily consent to interior entry of his properties.

84.    To the extent Defendants obtained or relied on court letters, informal directives, or Housing Court communications, those mechanisms were not substitutes for administrative warrants supported by reasonable legislative or administrative standards, nor were they substitutes for constitutionally adequate notice and opportunity to be heard.

85.    Defendants used, threatened to use, or continued to rely upon inspection observations to issue code violations, seek fines, support demolition determinations, pursue Housing Court charges, request interior access, and interfere with Plaintiff's repairs and property use.

86.    Plaintiff alleges that these entries and attempted entries did not stop with the Harp properties or with the 2022 demolitions. Plaintiff alleges that they continued into later years and continue presently, including through City inspection personnel or municipal agents who enter upon or attempt to inspect properties without first obtaining consent, a valid administrative warrant, a valid court order after notice and an opportunity to be heard, or a true exigency.

87.    Plaintiff alleges that he has attempted to record or document such entries and that witnesses observed City or municipal inspectors claim authority to enter despite Plaintiff's

15

objection. Plaintiffs will identify additional dates, properties, inspectors, witnesses, recordings, photographs, and violation notices after discovery and through amendment if necessary.

### D. 635 Woodlawn Avenue and Live-Burn Allegations

88.    At 635 Woodlawn Avenue, Plaintiff Financial Steps LLC owned or controlled the property, and Plaintiff Jirou Nakajima managed the property.

89.    Plaintiffs allege, based on information provided by Plaintiff Jirou Nakajima and documents presently available, that the City of Buffalo and/or Buffalo Fire Department used 635 Woodlawn Avenue for live-burn drills, training exercises, or fire-related drills without Plaintiffs' consent and without just compensation.

90.    Plaintiffs allege that the property had a new roof and that City personnel or agents cut, damaged, disconnected, or interfered with water lines and electrical systems in connection with or following City activity at the property.

91.    Plaintiffs paid substantial fines and charges connected with 635 Woodlawn Avenue and sold the property at a loss in or about 2024.

92.    The 635 Woodlawn Avenue conduct further demonstrates the City's continuing pattern of treating Plaintiffs' properties as municipal enforcement objects rather than private property protected by the Constitution.

93.    If Defendants contend that the use of 635 Woodlawn Avenue for fire training or live-burn activity served a public purpose, Plaintiffs plead in the alternative that such use was a physical occupation, seizure, and/or taking of private property for public use without consent and without just compensation.

## E. Municipal Policy, Custom, Practice, and Final Policymaker Allegations

94.     At all relevant times, the City of Buffalo, through its Department of Permit and Inspection Services, maintained policies, customs, practices, and/or usages permitting inspectors to enter private property without consent or administrative warrants, to obtain or seek interior access through Housing Court pressure rather than constitutional warrant procedures, and to use inspection observations to support fines, violations, emergency-demolition determinations, and prosecutions.

95.     The City maintained a policy, custom, practice, or usage of invoking emergency demolition authority without adequate pre-deprivation process and without meaningful consideration of less destructive alternatives, even where owners were attempting repair or rehabilitation.

96.     At all relevant times, Defendant Amdur, as Commissioner of Permit and Inspection Services, possessed final policymaking authority for emergency demolition determinations, demolition work, property-code enforcement, Housing Court representation, and the administration of unsafe-building enforcement in the City of Buffalo.

97.     The City Charter provides that the Commissioner has charge of demolitions and may direct or cause to be torn down, blown up, or otherwise destroyed on an emergency basis buildings deemed an immediate threat to public health, welfare, and safety.

98.     The City Code provides that where public safety requires immediate action, the Commissioner may deem an emergency to exist and cause a structure to be made secure or taken down without delay, but such authority is limited by the Constitution and may not be invoked arbitrarily, abusively, pretextually, or without reasonable basis.

17

99.    Defendant Amdur personally made, approved, ratified, and/or directed the emergency condemnation and demolition determinations for 9 Harp Place and 11 Harp Place.

100.    The challenged decisions were not merely isolated ministerial actions of subordinate employees; they were municipal decisions made by a final policymaker or made pursuant to policies and customs ratified by final policymakers.

101.    Plaintiffs allege that the City's liability is not dependent solely on identifying a written policy directing unconstitutional demolitions. Plaintiffs allege that the challenged deprivation was directed, authorized, approved, or ratified by a municipal official with final policymaking authority over emergency demolition, demolition work, and permit-and-inspection enforcement.

102.    The Commissioner's single decision to invoke emergency demolition authority is itself municipal policy when the Commissioner is the final decisionmaker under the City Charter and Code for emergency demolition, demolition work, and permit-and-inspection enforcement.

103.    Plaintiffs allege that Amdur's decisions, together with the City's continuing reliance on those decisions, were the moving force behind the constitutional violations and were not merely subordinate or ministerial acts insulated from municipal liability.

104.    The City had actual or constructive notice that its inspection and demolition practices were constitutionally problematic, including through objections by Plaintiff, Housing Court proceedings, owner requests for stays, administrative records, and litigation challenging Buffalo emergency demolitions.

105.    Despite that notice, the City continued its practices and continued to enforce the consequences of the challenged actions against Plaintiffs.

18

## FIRST CLAIM FOR RELIEF - 42 U.S.C. § 1983 - PROCEDURAL DUE PROCESS - FOURTEENTH AMENDMENT

### Against the City of Buffalo, Amdur, Sanchez, Myers, White, Doe Inspectors, and Hannah Demolition Inc. to the extent acting jointly with the City

106. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

107. Plaintiffs possessed constitutionally protected property interests in their real property, structures, improvements, repair materials, equipment, permits, restoration efforts, use and occupancy rights, economic value, and freedom from fines, charges, liens, and enforcement consequences imposed without due process.

108. Defendants deprived Plaintiffs of those interests by entering properties, issuing violations, invoking emergency demolition authority, demolishing 9 Harp Place and 11 Harp Place, billing Plaintiffs for demolition costs, and continuing to pursue fines, charges, court proceedings, and inspection demands without meaningful due process.

109. Plaintiffs were not afforded constitutionally adequate notice and meaningful pre-deprivation opportunity to be heard before demolition, destruction of property, or continued reliance upon inspection and demolition determinations.

110. No genuine emergency justified bypassing constitutionally adequate procedures, or, alternatively, Defendants invoked emergency procedures in an arbitrary, abusive, pretextual, and constitutionally unreasonable manner.

111. Defendants failed to provide prompt and adequate post-deprivation remedies sufficient to cure the deprivation, and instead continued the deprivation by billing, fining, prosecuting, and relying upon the challenged conduct.

112. The availability of post-deprivation review, including an Article 78 proceeding or later Housing Court process, did not cure the deprivation, Plaintiffs allege, because no genuine emergency made pre-deprivation process impracticable. Plaintiffs allege that where the City

19

feasibly can provide meaningful notice and hearing before destroying real property, it must do so.

113.    Plaintiffs allege that Defendants' emergency determination was constitutionally defective because it was based on stale, incomplete, exterior, subjective, or illegally obtained information; contradicted repair evidence; ignored the pending stay request; ignored less destructive alternatives; and failed to establish that immediate demolition without hearing was necessary.

114.    Defendants' conduct violated Plaintiffs' procedural due process rights under the Fourteenth Amendment.

115.    As a direct and proximate result, Plaintiffs suffered damages including loss of real property, loss of improvements, lost materials and equipment, loss of use, loss of restoration value, fines, charges, liens, legal fees, emotional distress to the individual Plaintiff, and other economic and consequential damages.

**SECOND CLAIM FOR RELIEF - 42 U.S.C. § 1983 - TAKING WITHOUT JUST COMPENSATION - FIFTH AND FOURTEENTH AMENDMENTS**

**Against the City of Buffalo, Amdur, and Hannah Demolition Inc. to the extent acting jointly with the City**

116.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

117.    Defendants took, destroyed, appropriated, physically invaded, or substantially interfered with Plaintiffs' private property for asserted public purposes, including public safety, nuisance abatement, neighborhood protection, code enforcement, demolition, training, and municipal enforcement objectives.

118.    The demolition of 9 Harp Place and 11 Harp Place, the alleged use and damage of 635 Woodlawn Avenue, and the continued imposition of demolition costs, liens, fines, and

20

charges constituted takings and/or physical appropriations of private property or property interests.

119.    To the extent Defendants contend that the actions were undertaken for public safety or public use, Defendants were constitutionally required to provide just compensation unless the actions were a valid exercise of emergency police power supported by a genuine immediate emergency.

120.    Plaintiffs allege that no genuine emergency justified uncompensated destruction of the Harp structures, and that the emergency designation was arbitrary, abusive, pretextual, or unsupported by reasonable evidence.

121.    Instead of providing just compensation, the City billed Plaintiffs for demolition costs and continued to enforce charges and consequences flowing from the destruction.

122.    Defendants thereby violated the Takings Clause of the Fifth Amendment, applicable to the City through the Fourteenth Amendment.

123.    Plaintiffs are entitled to just compensation, damages, interest, costs, attorneys' fees, and all other relief permitted by law.

124.    Plaintiffs plead this claim without conceding that the City's conduct was a valid exercise of police power. If Defendants cannot prove a genuine immediate emergency, then the City's physical destruction, occupation, charging, and interference with Plaintiffs' property interests are compensable under the Fifth Amendment.

125.    Plaintiffs further allege that no state-exhaustion requirement bars this federal takings claim. Under Knick v. Township of Scott, 588 U.S. 180 (2019), a property owner may bring a Fifth Amendment takings claim in federal court when property is taken without compensation.

126.    Plaintiffs also allege that the taking was complete when Defendants physically invaded, destroyed, occupied, damaged, or appropriated Plaintiffs' property interests. In any event, the Harp demolitions were permanent destructions of buildings, and the alleged 635 Woodlawn fire-training use was a physical invasion or occupation of private property.

## THIRD CLAIM FOR RELIEF - 42 U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS - FOURTEENTH AMENDMENT

**Against the City of Buffalo, Amdur, Sanchez, Myers, White, Doe Inspectors, and Hannah Demolition Inc. to the extent acting jointly with the City**

127.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

128.    Plaintiffs possessed fundamental and constitutionally protected property interests in the ownership, use, repair, restoration, and enjoyment of their real property, and in being free from arbitrary governmental destruction, intrusion, seizure, and enforcement.

129.    Defendants' conduct was arbitrary, irrational, abusive, conscience-shocking, and not reasonably related to a legitimate governmental objective because Defendants ignored repair evidence, bypassed ordinary processes, invoked emergency demolition without reasonable basis, used warrantless inspections as enforcement predicates, and continued to prosecute and charge Plaintiffs after destruction of the properties.

130.    Defendants' conduct was particularly egregious because Plaintiffs were actively attempting to repair and stabilize the Harp properties, had retained a licensed architect, had pursued permits, and had invested substantial sums toward restoration.

131.    Plaintiffs plead the substantive due process claim in the alternative. Plaintiffs recognize that Defendants may argue that more specific constitutional provisions govern some of the challenged conduct, but Plaintiffs allege that Defendants' conduct was so arbitrary, abusive, irrational, and conscience-shocking that it independently violated substantive due process.

132. Defendants' conduct violated Plaintiffs' substantive due process rights under the Fourteenth Amendment.

133. Plaintiffs suffered damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF - 42 U.S.C. § 1983 - UNREASONABLE ADMINISTRATIVE SEARCHES - FOURTH AND FOURTEENTH AMENDMENTS

### Against the City of Buffalo, Sanchez, Myers, White, Amdur, and Doe Inspectors

134. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

135. Administrative code inspections of private property, including residential interiors and protected curtilage, are searches within the meaning of the Fourth Amendment.

136. Defendants entered or caused entry into Plaintiffs' properties, including 9 Harp Place, 11 Harp Place, 816 Richmond Avenue, 77 Woodlawn Avenue, 239 Florida Street, 6 Butler Avenue, 222 Brunswick Boulevard, and/or other properties, without consent, without administrative warrants, without valid court orders, and without exigent circumstances.

137. To the extent Defendants claim that Housing Court correspondence, informal permission, general code-enforcement authority, or other proceedings authorized entry, Plaintiffs allege that those mechanisms did not satisfy Fourth Amendment administrative-warrant requirements unless they were supported by constitutionally adequate standards, notice, and a meaningful opportunity to contest entry.

138. Plaintiffs allege that Defendants repeatedly claimed authority to enter private property because they were code-enforcement officials, and that this practice violated the Fourth Amendment where it was not supported by consent, a valid administrative warrant, a valid court order, or exigent circumstances.

139. Defendants' entries were not limited to observations from public streets or areas impliedly open to visitors, and were not justified by any exception to the warrant requirement.

140.    Defendants used observations obtained from warrantless or otherwise unlawful searches to issue violations, support prosecutions, seek interior access, pursue fines, justify stop-work directions, and support demolition or enforcement decisions.

141.    Defendants acted pursuant to City policy, custom, practice, final policymaker direction, or deliberate indifference to Fourth Amendment requirements governing administrative inspections.

142.    Defendants thereby violated Plaintiffs' rights under the Fourth and Fourteenth Amendments.

143.    Plaintiffs suffered damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF - 42 U.S.C. § 1983 - UNREASONABLE SEIZURES AND DESTRUCTION OF PROPERTY - FOURTH AND FOURTEENTH AMENDMENTS

### Against the City of Buffalo, Amdur, Sanchez, Myers, White, Doe Inspectors, and Hannah Demolition Inc. to the extent acting jointly with the City

144.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

145.    The physical destruction of buildings, confiscation or destruction of materials and equipment, interference with utilities, and imposition of demolition control over private property constituted seizures of Plaintiffs' property within the meaning of the Fourth Amendment.

146.    Plaintiffs allege that bulldozing a building, destroying repair materials, disabling utilities, using private property for training, or exercising demolition control over a parcel meaningfully interfered with Plaintiffs' possessory interests in property and therefore constituted a seizure within the meaning of the Fourth Amendment.

147.    The seizures were unreasonable because Defendants allegedly transformed disputed code-enforcement concerns, repairable fire damage, and later inspection disputes into

24

permanent destruction and continuing enforcement, without a warrant, valid order, genuine emergency, or meaningful pre-deprivation process.

148.    The seizures were unreasonable because they were undertaken without a warrant, without valid court order, without consent, without a genuine emergency, without adequate process, and without meaningful consideration of less destructive alternatives.

149.    The demolition of 9 Harp Place and 11 Harp Place permanently destroyed Plaintiffs' possessory interests in the structures, improvements, restoration materials, and economic value of the properties.

150.    Defendants' alleged live-burn, utility interference, and property damage at 635 Woodlawn Avenue likewise constituted unreasonable seizures and physical interference with property.

151.    Defendants acted pursuant to City policy, custom, practice, final policymaker direction, or deliberate indifference to Fourth Amendment requirements governing seizures of property.

152.    Defendants thereby violated Plaintiffs' Fourth Amendment rights.

153.    Plaintiffs suffered damages in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF - 42 U.S.C. § 1983 - EQUAL PROTECTION / CLASS-OF-ONE AND SELECTIVE ENFORCEMENT - FOURTEENTH AMENDMENT**

**Against the City of Buffalo, Amdur, Sanchez, Myers, White, and Doe Inspectors**

154.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

155.    Plaintiffs allege, upon information and belief, that they were intentionally treated differently from other similarly situated Buffalo property owners who owned fire-damaged, vacant, code-violating, or repairable properties but were afforded ordinary notice, repair

25

opportunities, permit review, stabilization options, or non-demolition enforcement measures. Plaintiffs will identify specific comparators through discovery as necessary.

156. There was no rational basis for treating Plaintiffs' repairable properties as immediate demolition emergencies while allowing similarly situated property owners meaningful opportunities to repair, stabilize, sell, or cure.

157. Upon information and belief, based on Plaintiff's property history, objections to City entry, and the sequence of enforcement activity, Defendants targeted Plaintiffs' properties for heightened scrutiny, warrantless inspections, aggressive prosecution, fines, stop-work directives, emergency demolition, and repeated enforcement because Plaintiff objected to City entry, challenged Housing Court practices, attempted to repair the properties, and resisted unlawful municipal demands.

158. Defendants' selective treatment was irrational, arbitrary, malicious, retaliatory, or motivated by bad faith, and violated the Equal Protection Clause.

159. Plaintiffs suffered damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF - TRESPASS

### Against the City of Buffalo, Sanchez, Myers, White, Doe Inspectors, and Hannah Demolition Inc.

160. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

161. Plaintiffs owned, possessed, controlled, or had the right to exclude others from the affected properties.

162. Defendants intentionally entered, caused entry upon, or remained upon Plaintiffs' properties without consent or lawful privilege.

163. The City inspector Defendants entered or caused entry upon Plaintiffs' properties without administrative warrants, valid court orders, consent, or exigent circumstances.

164.    Hannah Demolition Inc. entered 9 Harp Place and 11 Harp Place and demolished the structures pursuant to City authorization that Plaintiffs allege was constitutionally and legally defective.

165.    Hannah Demolition Inc. allegedly acted as more than a passive bystander because Plaintiffs allege that it entered and destroyed private property pursuant to City bid, City permit, City authorization, and a City notice and order to proceed. Plaintiffs plead federal claims against Hannah Demolition only to the extent discovery confirms joint action or state action sufficient under § 1983, and plead state-law claims against Hannah Demolition independently.

166.    Plaintiffs allege that Hannah Demolition intentionally entered private land and participated in state-directed seizure and destruction of property. Plaintiffs plead, in the alternative, that even if Hannah Demolition is not deemed a state actor for § 1983 purposes, its conduct supports Plaintiffs' state-law trespass, conversion, negligence, and related claims.

167.    Defendants' entries interfered with Plaintiffs' possession, use, enjoyment, restoration, and economic exploitation of the properties.

168.    Defendants' trespasses caused damages in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF - CONVERSION

**Against the City of Buffalo, Amdur, Hannah Demolition Inc., and Doe Defendants**

169.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

170.    Plaintiffs owned and had immediate superior possessory rights to personal property, materials, equipment, fixtures, salvageable building components, and other property located at the affected premises, including materials and equipment at 9 Harp Place and 11 Harp Place.

171.   Defendants intentionally exercised dominion and control over Plaintiffs' property by destroying, removing, disposing of, retaining, interfering with, or billing Plaintiffs for destruction of the property.

172.   Defendants' dominion and control was unauthorized, wrongful, and inconsistent with Plaintiffs' rights.

173.   Plaintiffs were deprived of their property and suffered damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF - NEGLIGENCE / GROSS NEGLIGENCE

### Against the City of Buffalo, Amdur, Sanchez, Myers, White, Doe Inspectors, and Hannah Demolition Inc.

174.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

175.   Defendants owed Plaintiffs duties of reasonable care in the inspection, enforcement, condemnation, demolition, preservation, and handling of Plaintiffs' properties and personal property.

176.   Defendants breached those duties by failing to follow constitutionally adequate inspection, notice, hearing, warrant, demolition, preservation, utility-protection, and property-safeguarding procedures.

177.   Defendants further breached their duties by failing to consider repair evidence, failing to consider less destructive alternatives, failing to preserve materials and equipment, and failing to avoid unnecessary property damage.

178.   Defendants further breached their duties by relying on stale or incomplete information, failing to conduct a constitutionally valid and current inspection before demolition, failing to pause after counsel requested a stay, and failing to protect personal property and salvageable materials before destruction.

28

179. Defendants' conduct constituted negligence, gross negligence, recklessness, and/or willful disregard of Plaintiffs' rights.

180. Defendants' negligence and gross negligence caused damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF - UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

### Against the City of Buffalo

181. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

182. The City received benefits at Plaintiffs' expense by demolishing Plaintiffs' properties, clearing land, imposing demolition charges and administrative surcharges, collecting or attempting to collect fines, fees, user charges, liens, taxes, penalties, and other amounts connected to the challenged enforcement activity.

183. The City also received a public benefit by eliminating properties it deemed burdensome while shifting the financial cost of demolition and enforcement to Plaintiffs.

184. It would be inequitable and unjust for the City to retain those benefits, charges, fees, liens, or payments without compensating Plaintiffs for the property taken, destroyed, damaged, or burdened.

185. Plaintiffs are entitled to restitution, disgorgement, return of amounts paid, cancellation of improper charges, and other equitable relief.

## ELEVENTH CLAIM FOR RELIEF - DECLARATORY AND INJUNCTIVE RELIEF

### Against the City of Buffalo and City Defendants

186. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

187.    An actual controversy exists concerning whether Defendants may continue to enter or demand entry into Plaintiffs' properties without consent, administrative warrant, valid court order, or exigent circumstances; continue to rely upon alleged observations from warrantless inspections; continue to enforce charges and proceedings arising from the challenged demolitions; and continue to impose fines, liens, and costs based on constitutionally defective processes.

188.    Plaintiffs are entitled to a declaration that Defendants' warrantless inspection practices, unlawful emergency demolition practices, and continuing enforcement of fines, charges, liens, and prosecutions based upon those practices violate the United States Constitution and applicable law.

189.    Plaintiffs are further entitled to injunctive relief prohibiting Defendants from entering Plaintiffs' properties without consent, administrative warrant, valid court order, or exigent circumstances, and prohibiting Defendants from enforcing unlawful charges, liens, fines, or penalties arising from the challenged conduct.

190.    Plaintiffs have no adequate remedy at law for ongoing intrusion, enforcement, and continuing deprivation of property rights.

## PUNITIVE DAMAGES

191.    Plaintiffs allege that the individual Defendants acted with reckless or callous indifference to Plaintiffs' federally protected rights, and/or with intentional, malicious, arbitrary, abusive, or oppressive disregard of those rights.

192.    Plaintiffs seek punitive damages against the individual Defendants to the extent permitted by law.

30

## DEMAND FOR JURY TRIAL

193.    Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants as follows:

A. Awarding compensatory damages in an amount to be determined at trial;

B. Awarding just compensation for any taking of Plaintiffs' property;

C. Awarding restitution, disgorgement, cancellation, or refund of demolition charges, fines, liens, fees, user charges, penalties, administrative surcharges, and other amounts imposed as a result of Defendants' unlawful conduct;

D. Awarding punitive damages against the individual Defendants to the extent permitted by law;

E. Declaring Defendants' challenged practices unconstitutional and unlawful;

F. Enjoining Defendants from entering Plaintiffs' properties without consent, administrative warrant, valid court order, or exigent circumstances, and from enforcing unlawful fines, liens, charges, or penalties arising from the challenged conduct;

G. Awarding costs, disbursements, interest, and attorneys' fees pursuant to 42 U.S.C. § 1988 and all other applicable law;

H. Granting such other and further relief as the Court deems just and proper.

31

DATED: June 24, 2026
        Amherst, New York

**TIVERON LAW PLLC**
**Attorneys for Plaintiffs**

By: _____
Steven M. Cohen, Esq.
2410 North Forest Road, Suite 301
Amherst, New York 14068
(716) 636-7600
scohen@tiveronlaw.com

32